UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 06-CV-1989 (JFB) (AKT)
_____

MAUREEN MURPHY,

Plaintiff,

VERSUS

JOHN E. POTTER,
Postmaster General,

Defendant.

_____

MEMORANDUM AND ORDER
June 12, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Maureen Murphy (hereinafter, "plaintiff" or "Murphy") brings this action alleging employment discrimination on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") against John E. Potter, Postmaster General (hereinafter, "defendant"). Plaintiff, a female employee at the United States Postal Service ("USPS" or the "Postal Service"), asserts that her requests for both tuition reimbursement and two details to the Law Department were denied by the USPS as a result of her gender.[1]

Defendant now moves for summary judgment. For the following reasons, defendant's motion for summary judgment is granted in its entirety.

I. BACKGROUND

A. The Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits and the parties' Local Rule 56.1 statement of

---

[1] Although the complaint also alleged a hostile work environment claim, plaintiff withdrew that claim at oral argument on the summary judgment motion.

facts.[2] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

---

[2] As defendant points out, plaintiff failed to comply with Local Civil Rule 56.1 in that plaintiff did not properly respond to defendant's Rule 56.1 Statement of Facts (hereinafter, "Def.'s 56.1"). "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not comply with Rule 56.1, plaintiff's written submissions – specifically the Wolin Declaration – cite to the relevant portions of the record upon which plaintiff is relying. Thus, the moving party and the Court are clearly aware of the portions of the record upon which plaintiff relies in opposition to the motion, and the defendant has not identified any prejudice arising from the plaintiff's failure to comply with Rule 56.1. Accordingly, in the exercise of its broad discretion, the Court will not reject plaintiff's opposition based upon her failure to comply with Rule 56.1, but rather has fully considered plaintiff's opposition to defendant's summary judgment motion on the merits. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n.2 (2d Cir. 2003) (excusing failure to comply with Local Civil Rule 56.1 where the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

1. Plaintiff's Job Position at the USPS

Plaintiff began working at the USPS in February of 1987. (Def.'s 56.1 ¶ 15.)[3] Between September 2000 and December 2000, plaintiff completed the Postal Service's Associate Supervisors Program ("ASP") (*Id.* ¶ 16.) Upon completing the ASP, plaintiff worked as a distribution supervisor at the Western Nassau mail processing plant facility in Garden City, New York (the "Plant"), where she supervised the processing of mail. (*Id.* ¶ 17.)

2. USPS Employee Training and Tuition Reimbursement

The USPS administers a training and development program for its employees. (*Id.* ¶ 1.) The rules and regulations for the training and development program are set forth in section 7 of the USPS's Employee and Labor Relations Manual (the "ELM"). (*Id.* ¶ 2.) The training and development program consists of three basic categories of training: job training, self-development training, and job experiences. (*Id.* ¶ 3.) The ELM defines self-development training as "training which is taken to attain self-determined goals or career objectives but is not directly related to the employees' current job. This training is noncompensable . . . and must be approved in advance if postal resources are to be used."[4] *See* ELM § 711.421. The conditions for

---

[3] Where only one party's 56.1 Statement is cited, the other party does not dispute the facts alleged or has offered no admissible evidence to refute the fact.

[4] Although plaintiff disputes this factual assertion in her deposition (*see* Pl.'s Dep. 34), plaintiff has not provided any evidence to contradict the plain language of the ELM requiring advance approval.

2

participating in self-development training include participating in the training outside of the employee's regular working hours. (Def.'s 56.1 ¶ 5.)

The ELM defines the types of training available to employees as postal training, nonpostal training, and other training. (*Id.* ¶ 6.) The ELM defines nonpostal training as "training conducted by nonpostal sources under a tuition or registration fee arrangement funded in whole or in part by the Postal Service." (*Id.* ¶ 7.) The training and development program provides conditional reimbursement for tuition and other expenses to employees who participate in approved nonpostal training. (*Id.* ¶ 8.)

Approval for tuition reimbursement is conditioned on compliance with the ELM. (*Id.* ¶ 10.) Employees seeking tuition reimbursement for nonpostal training must comply with the rules and regulations set forth in Section 740 of the ELM. (*Id.* ¶ 11.) Section 741.22 of the ELM states that:

> Educational expenses for tuition, fees, books, and supplies for nonpostal training are paid by the Postal Service if both of the following conditions are met:
>
> a. The nonpostal training is either Job Training (as defined in 711.41) or Self-Development Training (as defined in 711.42) benefitting both the employee and the Postal Service from a career development standpoint. When Self-Development Training goals cannot be identified as providing benefit to the Postal Service, no payment of expenses is authorized.
>
> b. The nonpostal training is not for the sole purpose of obtaining one or more academic degrees, even if an academic degree is required to qualify for appointment to a particular position. Each course that is part of a degree program must be evaluated on its own merits; that is each course must meet the criteria in [section] a.

ELM § 741.22. However, those employees seeking reimbursement for nonpostal training must also comply with a variety of restrictions, including Section 741.231, which states that:

> Employees do not have a right to have their nonpostal training costs paid by the Postal Service unless the specific training is approved in advance by an authorized official.

ELM § 741.231. Andrew J. Moresco ("Moresco"), the Human Resources Manager of the USPS, Long Island District (LID), reviews all tuition reimbursement requests submitted by LID employees for, *inter alia*, nonpostal training. (Def.'s 56.1 ¶ 9.)

By letter dated February 23, 1998, David Solomon ("Solomon"), Vice President of Area Operations, informed EAS employees (specifically, managers and supervisors) of the availability of the tuition reimbursement program (the "February 23 Letter"). (Pl.'s 56.1 ¶ 7.) In the February 23 Letter, Solomon stated that "EAS managers and supervisors who take advantage of this benefit will enhance their own career development while learning and applying the latest managerial techniques in the work environment." (*Id.*) The policy that accompanied the letter confirmed that the purpose of the program is

3

to "[d]evelop and maintain a qualified EAS workforce that can accept and adapt to change in the workplace in the new millennium." (*Id.*) The policy also states that the "[d]egree program or certificate program must be in a concentration that relates to the business interests of the Postal Service." (*Id.*)

### 3. Denial of Plaintiff's Tuition Reimbursement Request

Between February 2001 and August 2001, plaintiff completed a paralegal certificate course at Long Island University, C.W. Post. (Def.'s 56.1 ¶ 18.) The start date for the course was February 20, 2001. (Pl.'s 56.1 ¶ 2.) On March 12, 2001, plaintiff completed a tuition reimbursement request form wherein she requested reimbursement from the USPS for the tuition and fees for the paralegal course. (Def.'s 56.1 ¶ 19; Pl.'s 56.1 ¶ 2.) By letter dated March 22, 2001, plaintiff requested approval to participate in the tuition reimbursement program. (Pl.'s 56.1 ¶ 2.) Plaintiff's tuition reimbursement request form sought reimbursement for the entire paralegal certificate program, rather than on a course by course basis. (Def.'s 56.1 ¶ 20.)

The USPS denied plaintiff's tuition reimbursement request. (*Id.* ¶ 21.) By letter dated April 19, 2001, Moresco stated, in relevant part, that:

> Certificate programs are not eligible for inclusion in the tuition reimbursement program unless the student receives a letter grade for each course. "Pass/Fail" and/or receipt of the certificate at the conclusion of the program are not acceptable.
>
> Possession of a Paralegal certificate will not automatically entitle you to represent the U.S. Postal Service in legal matters. Currently, the Postal Service employs paralegals – and lawyers – in lay positions. These individuals can not [sic] officially provide guidance or interpretive assistance on legal matters. To serve in such a capacity, the individual must occupy a recognized attorney or paralegal position. Since the reimbursement cost would be borne by the Long Island District, and this district is not authorized paralegal or attorney positions, there would be no direct benefit to the U.S. Postal Service from your participation in the program.
>
> It has been our practice to support those educational programs that increase a supervisor's/manager's ability to perform effectively in the core operations of this organization. Specifically, the ability to provide consistent, efficient quality service to our customers.

(Wolin Decl., Exh. 3.) Plaintiff points out that nowhere on the February 23, 1998 version of the New York Metro Tuition Program, included with the February 23 Letter, does it state that the program must benefit supervisory and managerial functions only. (*Id.*, Exh. 6 at 5.)

Plaintiff appealed the tuition reimbursement denial to Solomon. (Def.'s 56.1 ¶ 22.) In May 2001, Solomon upheld the denial of plaintiff's request for tuition reimbursement. (*Id.* ¶ 23.) Plaintiff does not dispute that her paralegal skills did not enhance her career as a Postal Service

4

distribution supervisor. (*Id.* ¶ 26; *see also* Pl.'s Dep. 37.)

### 4. Denial of Plaintiff's Detail Requests

During December 2001, plaintiff requested a detail to the New York Metro Law Department (the "Law Department"). (Def.'s 56.1 ¶ 27.) Plaintiff's request for a detail to the Law Department was based, at least in part, on communications with an attorney in the Law Department. (*Id.* ¶ 28.)

According to plaintiff, on December 11, 2001, she asked Keith Fischer, her plant manager, about a detail opportunity, and the following conversation took place:

> "Keith, how does it look? Should I forget it?" Mr. Fischer then replied to [her] "No–it looks like a good opportunity in your chosen field." Mr. Fischer then told [her] to call him back the next day because he was going to notify Mr. Andrew Moresco, Long Island District Head of Personnel, of [her] intentions. When [she] called Mr. Fischer the following day his reply had turned around 180 degrees!!

(Wolin Decl., Exh. 12 at 3-4.)

On December 11, 2001, Fischer denied plaintiff's request for a detail, advising her that the Postal Service had invested $28,000 in her ASP training. (Def.'s 56.1 ¶ 29; Pl.'s 56.1 ¶ 6; *see also* Wolin Decl., Exh. 12 at 4.) He also said that she had to have a Level 16 position. (Wolin Decl., Exh. 12 at 4.) Plaintiff further testified that, as of December 11, 2001, plaintiff was nearing the completion of her one-year program as an Associate Supervisor, after which she could start on a detail. (Wolin Decl., Exh. 12 at 5-6.)

Around April 1, 2002, plaintiff again requested a detail to the Law Department. (Def.'s 56.1 ¶ 30; Pl.'s 56.1 ¶ 27.) Plaintiff testified that at this time she had completed 15 months and 4 days on the Distribution side and had more than completed the required one year in the Supervisor program. (Pl.'s 56.1 ¶ 27.) On April 2, 2002, a Law Department attorney advised plaintiff by email that the Law Department lacked funding to pay plaintiff's salary. The attorney further advised that plaintiff was welcome to participate in a detail, provided that "[plaintiff's] office is willing to pay [plaintiff's] salary while you work with the [Law Department]." (Def.'s 56.1 ¶ 31; Knapp Decl., Exh. E.) Plaintiff's supervisor at the Plant denied plaintiff's second request for a detail advising her that she was needed to work at the Plant. (Def.'s 56.1 ¶ 32.)

### 5. Plaintiff's Filing of EEO Complaints

On May 21, 2001, plaintiff contacted the New York Metro Area and requested EEO counseling. (Pl.'s 56.1 ¶ 5.) On September 29, 2001, plaintiff filed a formal complaint of gender discrimination against the Postal Service over its denial of her tuition reimbursement. (*Id.*) The complaint was accepted for investigation on October 8, 2001. (*Id.*)

On April 3, 2002, plaintiff again requested EEO counseling because she believed that the denial of her detail requests was also based upon her gender. (Pl.'s 56.1 ¶ 6.) On June 13, 2002, plaintiff filed a second formal complaint of gender discrimination against the Postal Service over its denial of her detail to the Law Department. (*Id.*) On July 22, 2002, the

5

USPS consolidated plaintiff's two complaints of gender discrimination. (*Id.*)

6. Plaintiff's Reassignment

During August 2002, the Postal Service reassigned plaintiff and two other female employees from the position of distribution supervisor to the position of customer service supervisor. (Def.'s 56.1 ¶ 38.) Customer service supervisors primarily oversee the delivery of mail and supervise letter carriers and clerks at local post offices. (*Id.* ¶ 39.) Upon being reassigned to the position of customer service supervisor, the Postal Service transferred plaintiff to East Hampton.[5] (*Id.* ¶ 40.)

6. Treatment of Other Employees

The articulated basis for plaintiff's claim is that she was denied the tuition reimbursement and two detail requests due to her gender. The following evidence is contained in the record concerning the gender breakdown of tuition reimbursement requests and detail requests by gender at the USPS.[6]

Nineteen LID employees, both male and female, were granted tuition reimbursement in 2001 for various academic pursuits that complied with the ELM. (*See* Moresco Decl. ¶ 26, Exh. 5.) The USPS denied six tuition reimbursement requests in 2001. (*See id.* ¶ 27, Exh. 5.) No LID employee was granted tuition reimbursement for a paralegal certificate course in 2001 or any other year. (*See id.* ¶ 28, Exh. 5.)

The EEO investigative report found that the LID approved 37 requests for tuition reimbursement during 2000 and 2001. (*See* Knapp Decl., Exh. E.) The EEO report found that of those LID employees approved for tuition reimbursement, 15 were women and 22 were men. (*Id.*) The LID denied tuition reimbursement requests to five (33%) of the female applicants and five (23%) of the male applicants. (*Id.*)

With respect to her tuition reimbursement denial, plaintiff argues specifically that two males received more favorable treatment than she did: Frank Bucaria ("Bucaria") and James Robinson ("Robinson"). Plaintiff testified that Bucaria, a manager of distribution operations, has benefitted from the New York Metro Area Tuition Reimbursement Program by acquiring a master's degree at the Postal Service's expense. (Wolin Decl., Exh. 6 at 11-12.) She also claims that Bucaria "further informed [her] that he is now seeking a doctorate degree." (*Id.* at 11.) However, defendant provides additional evidence that Bucaria, a male employee and a past recipient of tuition reimbursement for management and business courses, did not receive tuition reimbursement in 2001. (*See* Moresco Decl. ¶ 29, Exh. 5.) Specifically, by letter dated May 24, 2001, the USPS, in a letter from Moresco denied a tuition reimbursement request submitted by Bucaria for doctorate-related classes. (*See id.* ¶ 30, Exh. 6.)

With respect to Robinson, the exhibit supplied by plaintiff demonstrates that Robinson was granted tuition reimbursement for Business Law 2, but the USPS refused to

---

[5] Plaintiff does not claim that her transfer to East Hampton was in retaliation for filing an EEO complaint. (Def.'s 56.1 ¶ 41.)

[6] Although plaintiff disputes these statistics in a conclusory fashion, she has provided no evidence in the record to controvert them.

6

approve reimbursement for an Astronomy course because it did not benefit the USPS. Specifically, in a letter from Moresco, Robinson received the following response to his reimbursement request:

> The courses identified in your most recent request are *Business Law 2* and *Astronomy*. While Business Law has an obvious correlation to potential future benefits for the US Postal Service, there is some question regarding the appropriateness of your choice of Astronomy as a second course. While I fully realize that certain electives must be taken to earn a degree, the choice of electives should also reflect some benefit for the Postal Service. For example, if a science is required, then one that can be directly related to our business should be chosen. Therefore, before a decision can be made on approval of your request, you must either submit a change of course or a narrative explaining specifically how your participation in a course on astronomy will benefit the Postal Service.

(Wolin Decl., Exh. 11.)

With respect to her detail denial, plaintiff testified that she is aware of two male employees specifically who attained or continued to participate in detail opportunities while she was denied. (Wolin Decl., Exh. 12.) Specifically, she claims that Peter Avery ("Avery"), a newly-hired male employee from Emery Worldwide Freight Company at top pay as a supervisor without ever going through the Associate Supervisor Program, was given the opportunity to participate in a detail at Western Nassau Processing and Distribution Facility after a little more than one year on the job. (Wolin Decl., Exh. 12.) Plaintiff also argues that another male employee, Doug Hefter ("Hefter"), admitted that he "was promoted out of the ASP position and spent his time at Western Nassau before he laterally transferred to the East Meadow Post Office." (Wolin Decl., Exh. 12.) However, it is undisputed that no male LID employee received a detail to a non-LID office that was paid for by the LID. (Def.'s 56.1 ¶ 35.)

B. Procedural History

Plaintiff filed a complaint in this action on May 17, 2006, alleging employment discrimination under Title VII on the basis of her gender. On March 13, 2008, parties filed defendant's motion for summary judgment, plaintiff's response, and defendant's reply. Oral argument was held on April 17, 2008. The Court has considered all of the parties' submissions.

II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the

evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. LEGAL STANDARD FOR DISCRIMINATION CASES

Because plaintiff presents no direct evidence of discriminatory treatment based on her gender, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973). To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802))). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination.

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

IV. DISCUSSION

Defendant argues that plaintiff's gender discrimination claim fails as a matter of law because the undisputed facts demonstrate that she was denied tuition reimbursement for her paralegal certificate course and denied a detail to the USPS Law Department for legitimate, non-discriminatory reasons. For the reasons set forth below, the Court agrees and grants defendant's motion because, given the

9

complete lack of evidence supporting plaintiff's discrimination claim, no reasonable jury could find that the articulated non-discriminatory reasons for the employment decisions were pretextual.

As a threshold matter, defendant argues that plaintiff cannot establish a *prima facie* case because she cannot demonstrate that she was denied the tuition reimbursement or the temporary detail under circumstances giving rise to an inference of discrimination. However, for purposes of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case.[7] In response, defendant has established legitimate, non-discriminatory reasons for denying plaintiff's tuition reimbursement and detail requests. Specifically, defendant argues that plaintiff was denied tuition reimbursement for her paralegal certificate course because she failed to comply with the applicable rules and regulations set forth in the ELM and her requested paralegal coursework would not have benefitted the operational needs of the LID. Defendant also argues that plaintiff was denied a detail to the Law Department because (1) it would not have benefitted the operational needs of the LID; and (2) the LID, not the Law Department, was going to be required to pay her salary while she was on the detail. Hence, the Court proceeds directly to

---

[7] Defendant also argues that plaintiff cannot establish the "adverse employment action" requirement of a *prima facie* case. In particular, defendant contends that plaintiff cannot establish that the denial of tuition reimbursement or the denial of a detail resulted in a material loss of benefits to plaintiff. However, the Court disagrees. "Employment actions that we have deemed sufficiently disadvantageous to constitute an adverse employment action include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams,* 368 F.3d at 128) (internal quotation marks omitted). The Second Circuit has held that "an involuntary transfer may constitute an adverse employment action if the plaintiff 'show[s] that the transfer created a materially significant disadvantage' with respect to the terms of her employment." *Williams,* 368 F.3d at 128 (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)). The same analysis would apply to a denial of a transfer or detail opportunity. The Second Circuit has also treated a denial of a tuition reimbursement as an adverse employment action under certain circumstances. *See, e.g., Torrington Extend-A-Care Employee Ass'n v. NLRB,* 17 F.3d 580, 591 (2d Cir. 1994); *see also Breneisen v. Motorola, Inc.,* 512 F.3d 972, 980 (7th Cir. 2008) ("On this record, we have no reason to think that tuition reimbursement was not an entitlement, and without some information as to the amount of money involved, we cannot conclude that the denial of reimbursement was not an adverse employment action or materially adverse action."); *Miller v. Batesville Casket Co.,* No. 02-CV-5612 (DLI) (ARL), 2007 WL 2120371, at *8 (E.D.N.Y. July 23, 2007) ("[The employer's] decision to alter its tuition reimbursement policy qualifies as an adverse employment action because tuition assistance was part of [plaintiff's] compensation.") (citations omitted). Based upon this case law and the current record, plaintiff has overcome the *prima facie* burden of proving an adverse employment action. However, as discussed in detail below, plaintiff's claim still fails on summary judgment because defendant has put forth compelling non-discriminatory reasons for the decisions and there is no evidence from which a reasonable jury could infer gender discrimination.

10

the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y. 1999), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

In response to defendant's motion for summary judgment, plaintiff points to several pieces of evidence in support of her argument that a reasonable jury could find that defendant's proffered non-discriminatory reasons for the denials were a pretext for gender discrimination. First, plaintiff argues that issues of fact exist as to whether defendant's justifications were valid. Specifically, she points to a variety of areas in her deposition where she directly disputes arguments made by the defendant – namely, (1) she testified that the tuition reimbursement and detail do not need to specifically benefit the LID under the USPS policy, but rather her course work and assignment to the Law Department could benefit the USPS as an entity; (2) that she was not required to first obtain authorization prior to commencing the paralegal program; (3) that she did not have to be working toward a degree; and (4) that she did not have to seek authorization on a course-by-course basis. Second, plaintiff submits that there is evidence that similarly-situated male USPS employees received tuition reimbursement or were granted details.

Defendant argues the following: (1) these purported disputed issues of fact are immaterial and do provide any evidence of discrimination; and (2) plaintiff's claim that the male employee comparators are similarly situated is unsupported by the record. In short, defendant contends that plaintiff has failed to adduce evidence sufficient to support a rational finding that the defendant's reasons for denying the tuition reimbursement and the details were pretextual and based on her gender.

Having carefully examined the evidence contained in the record, the Court concludes that, when viewed as a whole and in the light most favorable to plaintiff, the evidence does not create genuine issues of material fact as to whether defendant's stated reasons for denying plaintiff's requests were pretextual, and whether gender was a factor in the USPS's denials for tuition reimbursement or the detail to the Law Department. Specifically, the undisputed evidence demonstrates the following: (1) plaintiff's clear failure to comply with the applicable rules and regulations set forth in the ELM for tuition reimbursement; (2) both men and women have been denied tuition reimbursement from the USPS when the course does not pertain to the employee's work at the USPS or benefit the LID, but granted as to both men and women when it does; (3) no LID employee, male or female, ever received reimbursement for a paralegal certificate as was being requested by plaintiff; and (4) no LID employee, male or female, was ever granted a detail to the Law Department (or any other department outside the NY Metro area). Moreover, as discussed below, there is a clear absence in the record of any factual basis from which a jury could infer discriminatory intent and, thus, plaintiff's conclusory claims and purported disputes on immaterial facts do not create genuine issues of material fact that defeat defendant's motion for summary judgment.

A. Tuition Reimbursement

The record shows that the overarching basis for the denial of plaintiff's tuition reimbursement request was that allowing such reimbursement would be inconsistent with the business interests of the LID.[8] In a letter to plaintiff, Solomon specifically explained to her how the supervisors looked at the business interests relating specifically to her district – the LID – in determining whether to reimburse costs. (*See* Wolin Decl., Exh. 5; *see also* Moresco Decl. ¶ 32 ("I grant tuition reimbursement requests to both male and female employees when the request complies with the ELM and *meets the needs of the LID*.") (emphasis added).) He further explained that the USPS would not benefit from supporting plaintiff in obtaining a paralegal certificate because doing so would not be in the business interests of the LID. (Wolin Decl., Exh. 5.) In justifying such a decision to deny plaintiff's requests, the evidence in the record shows that the decisionmakers looked to the business interests of the district, not the entire Postal Service, in exercising their discretion. For instance, Solomon explained to plaintiff that the Law Department is a Headquarters Field Unit and, although it is within the geographic area of the LID's responsibility, it is not part of the administrative responsibilities of the New York Metro Area. Therefore, plaintiff wished to advance her knowledge in an area that is very specific in nature – paralegal – and not encompassed by the New York Metro Area's organizational structure.[9] Moreover, in initially denying plaintiff's request, Moresco explained to plaintiff that the reimbursement cost would be borne by the LID, and since the LID is not authorized paralegal or attorney positions, there would be no direct benefit to the U.S. Postal Service from her participation in the paralegal program.[10] (Wolin Decl., Exh.

---

[8] Although one of the initial reasons the USPS (specifically, Moresco) provided plaintiff for denying her tuition reimbursement application was that she did not receive a letter grade for each course (*see* Wolin Decl., Exh. 3), plaintiff corrected that issue by having the University provide the USPS with signed letters indicating her letter grade in that particular course. Thus, the pass/fail nature of her coursework was not an issue on appeal to Solomon, who still refused to reimburse plaintiff for the reasons discussed *infra*. (*See* Wolin Decl., Exh. 4.) Similarly, although plaintiff argues that she complied with the USPS ELM rules even though she did not request reimbursement in advance of taking course work, her contention is directly contradicted by the record. Specifically, Section 741.231 of the ELM states the following: "Employees do not have a right to have their nonpostal training costs paid by the Postal Service unless the specific training is approved *in advance by an authorized official.* ELM § 741.231. In any event, any dispute over this issue is not critical because the primary articulated reason for the denial of reimbursement was not the belated timing of the reimbursement request, but rather that the paralegal certificate did not benefit the operational needs of the LID.

[9] The Court notes that plaintiff's current position at the USPS was that of a distribution supervisor. The policy was designed "to encourage EAS managers and supervisors to enhance their career development while learning and applying the latest managerial techniques in the work environment." (Wolin Decl., Exh. 5.) The Court does not find any language in the policy describing that the USPS is required to fund an employee changing careers.

[10] The Court notes that plaintiff even testified to the fact that her career would not be enhanced by the paralegal certificate. Specifically, she testified in her deposition as follows:

    Q: How would obtaining a

3.) Overall, the USPS made the discretionary determination that a paralegal certificate degree would not fit within the business interests of the LID, especially because such a certificate would not "enhance [her] career development while learning and applying the latest managerial techniques in the work environment," given that plaintiff's current position was a distribution supervisor. (*See* Wolin Decl., Exh. 5.)

Plaintiff argues that the policy does not require that the benefit from the course be consistent with operations of the LID, but rather refers to "benefitting both the employee and the Postal Service from a career development standpoint." ELM § 741.22(a). Thus, according to plaintiff's reading of the policy, if the course teaches a skill that is within the job requirements of some employee within the USPS nationwide (even if it does not relate to the employee's particular position or the division in which the employee works), it must be approved under this policy. Plaintiff points out that, by allowing her to pursue this career path as a paralegal, it may be benefitting the USPS because some day she may get a position in the USPS Law Department.

However, the Court finds this argument unavailing. The above-referenced language does not support plaintiff's sweeping and illogical interpretation. Although it does not reference the LID operations in particular, the above-reference language is consistent with defendant's position in this case – namely, that courses that have no application to the employee's position or the operations of a particular geographic division of the USPS benefit neither the employee nor the USPS and, thus, would not be approved under the policy. In contrast, plaintiff's interpretation of the policy would lead to absurd results. For example, under plaintiff's theory, the USPS would be required to approve the following courses for employees: (1) pre-med courses or nursing courses for mail carriers because the mail carriers may some day want to apply for a position as a nurse in a USPS facility (assuming such position existed); or (2) pilot courses for a USPS truck driver because the truck driver may want to apply some day to be a USPS pilot (assuming such position existed). In fact, under plaintiff's reading of the policy, the USPS would not only have to pay for her paralegal certificate, but also a law degree if she chose to pursue one because she might want to eventually transfer to a lawyer position from her current position as a distribution supervisor. In short, there is no support in the policy language or in logic for plaintiff's strained interpretation.

In any event, regardless of whether plaintiff agrees with the policy, the uncontroverted record clearly demonstrates that the defendant has applied the policy equally as to both male and female employees. As the Second Circuit and many other circuit courts have noted, where there is no evidence of discrimination, it is not the role of a federal court to act as a super-personnel department to second-guess the fairness or wisdom of a particular business decision by an employer. *See, e.g., Byrnie v. Town of Cromwell, Bd. of*

---

paralegal certificate enhance your career at the distribution center as a distribution manager?

\*\*\*

A: As a distribution manager, two different things. It wouldn't.

(Pl.'s Dep. 37:9-20.)

*Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) (internal quotation marks omitted)); *see also Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 785 (7th Cir. 2004) (affirming summary judgment for employer and stating that the court "will not sit as a super-personnel department nor second-guess [the employer's] business strategies where, as here, [the plaintiff] has provided no convincing evidence that the company lied about its [reasons for terminating the plaintiff]"); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("Reasonable people may disagree about whether [an employer acted correctly or fairly] but such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision [on its asserted non-discriminatory reasons]."). Thus, given the equal application of the written tuition reimbursement policy to men and women in the instant case (as discussed *infra*), plaintiff's disagreement with the interpretation of the reimbursement policy does not provide any basis for finding that the defendant's denial of her tuition reimbursement was motivated by gender discrimination.

Although plaintiff disagrees with the discretionary decision by her supervisors not to reimburse her tuition costs and argues that nothing in the February 23, 1998 policy itself limits the business interests of the USPS to the LID only, plaintiff has pointed to absolutely no evidence in the record to indicate that its decision was a result of her gender. Instead, the only evidence plaintiff provides relating to gender is her attempt to compare herself to "similarly situated" male employees, who she claimed were treated differently than she – *i.e.*, given reimbursements. Defendant argues that the male USPS employees that plaintiff relies on are not "similarly situated" and, thus, such evidence cannot be used as a matter of law to support plaintiff's *prima facie* case. As set forth below, the Court agrees with defendant and finds that there are no genuine issues of fact to survive summary judgment.

It is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects" . . . varies somewhat from case to case and, as we recognized in *Norville,* must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable

14

seriousness . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical . . . . The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40-41 (2d Cir. 2000) (citations and quotations omitted).

With respect to tuition reimbursement, plaintiff argues in a vague and conclusory statement that such individuals are similarly situated and treated more favorably. (*See* Pl.'s Resp., at 7) ("[T]he record, as discussed in the accompanying Declaration of Alan E. Wolin and Rule 56.1 Counter-Statement, indicates that, at the same time that plaintiff's tuition reimbursement was denied, other male employees, who plaintiff contends were similarly situated, were treated more favorably.") However, plaintiff has failed to cite any evidence as to any particular male employee who was similarly situated to her – namely, an employee who sought tuition reimbursement for a paralegal certificate or some other area of study that is unrelated to the business mission of the LID – and was treated more favorably than plaintiff by receiving tuition reimbursement. *See, e.g., Sundaram v. Brookhaven Nat'l Labs.,* 424 F. Supp. 2d 545, 579-80 (E.D.N.Y. 2006) (granting summary judgment for employer on denial of tuition reimbursement where, among other things, plaintiff was not similarly situated to other employees who were approved under the plan).

The only two employees referred to by plaintiff – Bucaria and Robinson, both male USPS managers – do not support plaintiff's position.[11] Instead, the undisputed facts specifically show that plaintiff was treated similarly to both Bucaria and Robinson. For instance, both Bucaria and Robinson were denied tuition reimbursement requests that very same year as plaintiff. In particular, Bucaria was denied his doctorate degree request because his choice of courses did not provide a "direct benefit to the Postal Service" and "addresses issues currently beyond [his] realm of responsibility." (*See* Wolin Decl., Exh. 10.) Robinson was similarly denied tuition reimbursement because his participation in an Astronomy class did not "reflect some benefit for the Postal Service." (*See* Wolin Decl., Exh. 11.) Plaintiff has not pointed to any evidence to contradict these undisputed facts.[12] Plaintiff was denied

---

[11] As a threshold matter, there is complete lack of evidence in the record regarding how plaintiff is similarly situated to either Bucaria or Robinson. In fact, plaintiff testified that she does not even know whether, unlike the plaintiff, these allegedly similarly-situated individuals obtained prior approval for their tuition reimbursement requests. (*See* Pl.'s Dep. 45:16-21.) The Court recognizes that this factual determination is usually reserved for the jury. *See Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (same). However, given that the Court also finds, as set forth *infra*, that no reasonable jury could determine that plaintiff was treated differently, the Court finds the evidence regarding these two individuals to be insufficient to establish an inference of discrimination.

[12] Plaintiff suggests that (even though Robinson was denied approval for Astronomy) the approval

15

reimbursement costs because her participation in a paralegal course would similarly not provide a benefit to the Postal Service. Therefore, plaintiff has not provided any evidence to show that she was treated differently from these two male employees.

Not only has plaintiff failed to provide any evidence of a similarly situated male employee receiving more favorable treatment than plaintiff on the issue of tuition reimbursement, but defendant has in fact provided statistics demonstrating that, as a general matter, men and women were both granted and denied tuition reimbursements during this relevant time-frame. For instance, an EEO investigative report found that the LID approved 37 requests for tuition reimbursement during 2000 and 2001. (*See* Knapp Decl., Exh. E.) The EEO report found that of those LID employees approved for tuition reimbursement, 15 were women and 22 were men. (*Id.*) Specifically, in 2001 (the year plaintiff's tuition reimbursement was denied), the record reflects that the Postal Service granted tuition reimbursement to nineteen employees, seven of whom were women. (Moresco Decl. ¶ 26, Exh. 5.) The LID denied tuition reimbursement requests to five (33%) of the female applicants and five (23%) of the male applicants. (*Id.*) Plaintiff does not provide any evidence to dispute these facts. Thus, the statistical evidence provided by defendant fully supports defendant's position that there is absolutely no evidence that female employees are being treated less favorably than male employees with respect to tuition reimbursement.

### B. Request for Detail to Law Department

With respect to the detail denial, there is also a complete lack of evidence to support plaintiff's claim of gender discrimination. The non-discriminatory reason provided by plaintiff's supervisors with respect to the denial of the detail to the Law Department was that the LID already invested $28,000 in her training, she needed to be in a Level 16 position, and they needed her at the Plant at the time. The LID would also have to pay plaintiff's Law Department salary because the Law Department could not do so. (Knapp Decl., Exh. E.)

Plaintiff disagrees with the reasons

---

of reimbursement for Robinson's Business Law 2 course shows differential treatment based on gender. *See* Wolin Decl. ("How, on one hand can Mr. Moresco state Business Law is acceptable with reference to Mr. Robinson, while, on the other hand, claiming that plaintiff's participation in a paralegal program, which includes similar courses, is not appropriate. The differing treatment is, again, obvious.") The Court disagrees and finds this contention that the paralegal courses were similar to a business course to be completely without merit. It is obvious that one could reasonably conclude that a Business Law course could benefit the operational needs of the LID because the USPS service is a business and it would be useful for employees to the know the law as it relates to the operation of that business, such as discrimination laws. In contrast, plaintiff pursued a paralegal certificate without advance authorization including a whole series of law/paralegal related courses – such as Legal Research, Real Estate, Matrimonial, and Probate – which have no logical connection to her position as a distribution supervisor at the Plant, nor have any apparent benefit to the operational needs of the Postal Service. In fact, plaintiff admitted in her deposition that a paralegal certificate would not benefit her career as a distribution supervisor at the USPS. (Pl.'s Dep. 37.) Thus, plaintiff's pursuit of a paralegal certificate is not similarly situated to Robinson's Business Law course.

16

provided by defendant for denying her detail requests and argues that there are triable issues of fact for the jury – namely, that the arguments about needing her and not being able to fund her are pretextual. In fact, plaintiff's testimony at her deposition went as follows:

> Q: Is it your position that you were denied a detail at the law department because you are a woman?
>
> A: I don't know.

(Pl.'s Dep. 66:18-21.) Moreover, plaintiff has proffered absolutely no evidence to undermine these reasons or to suggest that there were a pretext for gender discrimination. Plaintiff conceded in her deposition that she does not know of any male employees who received a detail that was paid for by the LID, rather than by the District where they went to work. (Pl.'s Dep. 66:2-7.) She also does not know of any employee who received a detail that was not paid for by the USPS entity where they went to work. (Pl.'s Dep. 66:8-17.)

Although plaintiff cites to two male employees who were granted details to support her position, these two employees were clearly not similarly situated to plaintiff. First, plaintiff argues in her 56.1 Statement that Avery, a male employee, was given the opportunity to participate in a detail at Western Nassau Processing and Distribution Facility after a little more than one year on the job while plaintiff, a fifteen year postal employee, was given no opportunities. Second, plaintiff argues that Hefter, a male employee, spent less than one year in the processing and distribution side before transferring to the East Meadow Post Office. However, these two employees sought and obtained details to positions that were *within*

the LID. In contrast, plaintiff was seeking a detail to a position *outside* the LID that required the LID to pay for her salary while plaintiff was on detail. The clearly articulated basis for the denial of plaintiff's detail was that she was seeking a position outside the district that resulted in a financial disadvantage to the LID. Thus, under these circumstances, no reasonable jury could find that these employees seeking details within the district are similarly situated to plaintiff and such evidence, therefore, provides no support for plaintiff's gender discrimination claim. In fact, there is no such similarly-situated employee. The undisputed facts show that no male LID employee received a detail to a non-LID office that was paid for by the LID. (Def.'s 56.1 ¶ 35.) In short, there is simply no evidence to support a gender discrimination claim based on the denial of the detail opportunity. *See, e.g., Charles v. Postmaster General,* No. 03-5927, 2004 WL 950178, at *2 (6th Cir. Apr. 28, 2004) (affirming grant of summary judgment on, among other things, discrimination claim relating to denial of detail to Chicago); *Bryant v. Brownlee,* 265 F. Supp. 2d 52, 60 (D.D.C. 2003) (granting summary judgment for Army in discrimination case where former employee claimed, among other things, she was denied the opportunity for a particular temporary detail, because "plaintiff has come forward with virtually no evidence to indicate that race or age discrimination motivated any of the conduct of which she complains").[13]

---

[13] The Court notes that plaintiff appears to make a general argument that she was denied all opportunities to advance. (*See* Wolin Decl., Exh. 12 (arguing that plaintiff "was given no opportunities whatsoever").) There is no evidence in the record that she applied for and was denied other detail requests, or any other attempts to advance within her position, outside of her

In sum, this Court recognizes, as the Second Circuit has warned, an extra measure of caution is required in discrimination cases because direct evidence of intent is rare. However, in the instant case, plaintiff has relied upon nothing more than conclusory arguments and speculation to support her position. Viewing all the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff was denied tuition reimbursement or the detail to the Law Department because of her gender. Accordingly, summary judgment for defendant is warranted.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 12, 2008
Central Islip, New York

\* \* \*

The attorney for plaintiff is Alan E. Wolin, Esq., of Wolin & Wolin, 420 Jericho Turnpike, Suite 215, Jericho, New York 11753. The attorney for the defendant is James H. Knapp, Esq., Assistant United States Attorney, Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, New York 11722.

---

specific request for a detail to the Law Department. In fact, plaintiff testified that she is not ready to pursue her next career progression as a postmaster. (*See* Pl.'s Dep. 95:10 - 96:14.) Thus, the Court finds plaintiff's argument to be unpersuasive.